# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **MAURA SCHERRER,** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**FPT OPERATING COMPANY, LLC D/B/A TALUS PAYMENTS,** a Texas limited liability company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Maura Scherrer ("Scherrer" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant FPT Operating Company, LLC ("Talus Payments" or "Defendant") to stop Talus Payments from violating the Telephone Consumer Protection Act by placing unwanted solicitation calls to consumers without their consent, and to otherwise obtain injunctive and monetary relief for all persons injured by Talus Payments' conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

## INTRODUCTION

1.  When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). 20. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day.

*In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

3. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

4. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. See id.

5. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

### TALUS PAYMENTS

6. Talus Payments is a business payment processing provider. Among its services, Talus Payments enables businesses to accept credit card payments through their cell phone.[1]

7. FPT Operating Company, LLC operates the d/b/a Talus Payments:

---

[1] https://taluspay.com/

## Informational – Terms of Service

**Terms of Service**

These Terms of Service (these "Terms") are a binding legal agreement between you, the user ("you" or "your") and FPT Operating Company, LLC d/b/a Talus Payments ("Talus"). These Terms govern your use of Talus's website, www.taluspay.com and of each other site of Talus associated therewith (collectively, the "Site"), as well as those services made available on the Site, as updated from time to time (collectively, the "Services"), whether such Services are offered by Talus or one of our [2]

8. Talus Payments markets its payment processing systems to businesses all over the country.

9. Talus' agents are instructed to engage in cold calling in order to generate sales.

10. When soliciting business, Talus Payments' agents use an autodialer through which they place autodialed solicitation calls.

11. However, Talus Payments is calling cell phone numbers using an autodialer without having the necessary prior express written consent that is required for making autodialed telemarketing calls.

12. In Plaintiff's case, Talus Payments placed 2 autodialed phone calls to her cellular phone, despite being told not to call again after the first call.

---

[2] https://taluspay.com/terms-of-service/

3

13. In response to these calls, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease from placing calls using an autodialer, as well as an award of statutory damages to the members of the Class.

## PARTIES

14. Plaintiff is a resident of Arvada, Colorado.

15. Defendant Talus Payments is a Texas limited liability company headquartered in Dallas, Texas. Defendant conducts business throughout this District, the State of Texas, and throughout the United States.

## JURISDICTION AND VENUE

16. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

17. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant solicits consumers in this District, does significant business in this District, and because the wrongful conduct giving rise to this case occurred in this District. Venue is also proper because Plaintiff is located in this District.

## COMMON ALLEGATIONS

**Talus Payments Places Autodialed Calls to Consumer Cell Phones Without Consent**

18. Talus Payments is a business payment processing company.

19. Talus Payments is open about its use of an autodialer to generate leads.

20. In job postings for outbound call center representatives, Talus Payments states that the representatives will be placing calls using an autodialer:

### Outbound Call Center Representative with Talus Payments

Talus Payments • Sherman, TX, US

⊗ This job is no longer accepting applications

| | |
|---|---|
| The position listed below is not with Rapid Interviews but with Talus Payments Our goal is to connect you with supportive resources in order to attain your dream career. We work directly with hundreds of publishers to connect you with the right resources to fit your needs. You may also want to visit our News & Advice page to stay up to date with other resources that can help you find what you are looking for<br>This position assists our sales force with quality lead generation through appoinment setting. <u>Representatives in this position utilize an automated outbound dialer to contact small to medium sized business owners nationwide regarding our merchant payment processing solutions.</u><br><br>• Excellent verbal communication skills<br>• Must have the ability to memorize scripts and rebuttals<br>• Maintain quality standards set by the department<br>• Support process change initiatives as directed by management<br>• Enthusiastically strive to meet daily, bi weekly and monthly performance requirements | **Seniority Level**<br>Entry level<br><br>**Industry**<br>Insurance, Consumer Services, Financial Services<br><br>**Employment Type**<br>Full-time<br><br>**Job Functions**<br>Customer Service, Information Technology |

[3]

21. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

22. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers such as Plaintiff's.

23. There are many complaints posted online about calls that consumers have received from Defendant, including numerous complaints about Defendant's use of an autodialer and failure to comply with requests for the calls to stop:

> • "I've received multiple robocalls from here after requesting my number be removed from their call list. 888-522-5994 calls and hangs up - if you call back they ask you to visit the website. I'm visiting - here is my review. QUIT

---

[3] https://www.linkedin.com/jobs/view/outbound-call-center-representative-with-talus-payments-at-talus-payments-1485393823/

ROBOCALLING ME!"[4]

- "Criminal organization making illegal soliciting calls. You have to get permission to call people to solicite."[5]

- "Scammers. Call numbers on the DNC List. A complaint has been filed with the FCC."[6]

- "Weekly spam calls. We are not a business. We have never been a business. They call us weekly trying to sell us credit card processing. We tell them this is not a business. A week later, they call back. Why would anyone, if they were a business, want to work with a company like this? STOP HARASSING US."[7]

- "Calls businesses multiple times a week. This company calls the business at least twice a day. When I answer there is silence and then a prompt click indicating the call has ended. There is no way to request to be taken of the list. I do so at this point and in this way out of frustration. Please do not call again. With the reviews for this company and its practices and customer care, we are in no way interested in your services."[8]

- "Telemarketer call- person on the phone evasive as to purpose of call. Would not place on do not call list Telemarketer call- person on the phone evasive as to purpose of call. Would not place on do not call list. When asked if this was a telemarketing call stated "she was not a telemarketer". While perhaps technically true, perhaps her title is something else, this was certainly a prospector for a sales call. Grudgingly indicated that the company she was calling for was Taluspay. Asked to be removed from her call list - she said no, she was not a telemarketer."[9]

- "For years I have repeated asked this company not to call me. They call me weekly asking wanting to sell me credit card processing services. Stop calling me. We do not need your services. This is harassment!"[10]

- "This company calls on a weekly basis even though I've never done business with them and I am on the dnc registry This company calls on a weekly basis even though I've never done business with them and I am on the dnc registry"[11]

- "Talus Payments are calling constantly, bypassing the BLOCKED number on my services and going directly to voicemail to leaved their insidious message. Harassment of my business by calling constantly. They are using software to

---

[4] https://www.facebook.com/pg/TalusPay/reviews/?ref=page_internal
[5] *Id.*
[6] *Id.*
[7] https://www.bbb.org/us/tx/dallas/profile/credit-card-merchant-services/talus-pay-0875-90803915
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

6

> bypass my block numbers via my subscriber Comcast/Xfinity and going directly to voicemail."[12]

- "this company calls our business DAILY and does not say a word. Every phone call is documented through our caller I.D. DO NOT CALL MY BUSINESS AGAIN."[13]

# PLAINTIFF'S ALLEGATIONS

### Plaintiff Received Unsolicited Autodialed Calls to Her Cell Phone From Defendant Talus Payments

24. Plaintiff Scherrer uses her cell phone number for her own personal use and also for her non-profit Talulah's House.

25. She was not looking for a payment processor service for herself or Talulah's House at the time she received calls from the Defendant.

26. On November 14, 2019 at 8:28 AM, Plaintiff received an unsolicited autodialed phone call to her cellular phone from Defendant using phone number 972-441-8126.

27. When Plaintiff answered the call, she noticed a significant pause of silence before the live agent came on the line, indicating the use of an autodialer.

28. The agent explained that she was calling to sell Plaintiff a service so that Plaintiff could accept payments through her cell phone.

29. When asked, the agent identified the company she works for as Talus Payments.

30. Plaintiff told the agent that her number is registered on the National Do Not Call registry and that she is not interested in what the agent was selling. In response, the agent said that she would send over a Talus employee named Melissa on the following day at 11:00 AM. Plaintiff repeated that she is not interested, so the agent said that Melissa would come to Plaintiff's home at 1:00 PM instead. Plaintiff refused this meeting and ended the call, making it

---

[12] *Id.*
[13] *Id.*

7

clear she is not interested in doing business with Talus Payments.

31. The phone number 972-441-8126 is not an active phone number. When called, an automated voice indicates the fact that it is not in service.

32. Again on November 14, 2019, but at 8:38 AM, Plaintiff received a second autodialed solicitation call from Defendant, this time using phone number 888-522-5994.

33. When Plaintiff answered this call, she said "hello" twice, but there was silence on the other end, indicating the use of an autodialer. Plaintiff put the call on its hands-free speaker mode and placed it down on a table without hanging up to see if an agent would come on the line.

34. After a few seconds, an agent did come on the line. When questioned, the agent said they were calling from Talus Payments.

35. Frustrated by the second unwanted call, Plaintiff told the agent that she was not interested in their services and ended the call.

36. As of November 20, 2019, when 888-522-5994 is called, the following pre-recorded message is played:

> "Thank you for calling Talus Pay, a merchant payment processor. You've reached the general mailbox. To learn more about our company, please visit us online at www.taluspay.com. If you wish to be added to our Talus Pay do not call list, please leave a message with all phone numbers associated with your business beginning with the area code and we will remove them as soon as possible."

37. Plaintiff does not have a relationship with Talus Payments or any of its affiliated companies, nor has she ever requested that Talus Payments call her or otherwise consented to any contact from Defendant.

38. Plaintiff believes the two phone calls that she received from Defendant were autodialed, due to the audible pauses she heard from both of the calls.

39. Simply put, Talus Payments did not obtain Plaintiff's prior express written consent to call her cellular telephone using an autodialer.

40. The unauthorized calls placed by Talus Payments, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Plaintiff's use and enjoyment of her phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

41. Seeking redress for these injuries, Scherrer, on behalf of herself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Placed by Talus Payments

42. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone number, (3) using substantially the same calling equipment used to call Plaintiff, and (4) from whom Defendant claims they obtained prior express consent in the same manner as Defendant claims they obtained prior express from Plaintiff or from whom Defendant does not claim they obtained prior express consent.

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3)

Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

44. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

  (a) whether Defendant used an automatic telephone dialing system to call Plaintiff and the members of the Class;

  (b) whether Defendant made autodialed calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

  (c) whether Defendant placed autodialed calls to Plaintiff and members of the Class despite being told not to call again;

  (d) whether Defendant's conduct constitutes a violation of the TCPA; and

  (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so.

Neither Plaintiff nor her counsel has any interest adverse to the Class.

47.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

48.     Plaintiff repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference herein.

49.     Defendant and/or its agents placed unwanted solicitation calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class.

50.     These solicitation phone calls were placed *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class.

51.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of

Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

52. In the event that the Court determines that Defendant's conduct was willful or knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff and the Class together with costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**MAURA SCHERRER**, individually and on behalf of those similarly situated individuals

Dated: December 29, 2019          By: ___/s/ Stefan Coleman___

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*