**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge S. Kato Crews**

Case No. 1:19-cv-03703-SKC

MAURA SCHERRER, individually and on
behalf of all others similarly situated,

  Plaintiff,

    v.

FPT OPERATING COMPANY, LLC
D/B/A TALUS PAYMENTS, a Texas limited
liability company,

  Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

**Table of Contents**

I.    The scope of the autodialer prohibition under *Facebook*. .................................................. 2

II.    Defendant's arguments about *Facebook* lack merit............................................................. 5

    A.    *Facebook* did not hold that an autodialer must generate phone numbers............... 5

    B.    Defendant's argument on Footnote 7 fails................................................................ 6

    C.    Defendant's narrow definition of an autodialer would not serve the TCPA's purpose (it would defeat it). ....................................................................... 7

    D.    Under Footnote 7, the definition of an autodialer is both limited and reasonable. ................................................................................................................ 9

    E.    Defendant's out-of-circuit cases are not persuasive. ........................................... 10

III.    Applying *Facebook*, the Complaint states a claim. ........................................................ 12

## Table of Authorities

**Cases**

*Atkinson v. Pro Custom Solar LCC*,
  No. SA-21-CV-178-OLG, 2021 U.S. Dist. LEXIS 112396 (W.D. Tex. June 16, 2021) ......... 12

*Carl v. First Nat'l Bank*,
  No. 2:19-cv-00504-GZS, 2021 U.S. Dist. LEXIS 111889 (D. Me. June 15, 2021)................. 12

*Cole v. Sierra Pac. Mortg. Co.*,
  No. 18-cv-01692-JCS, 2021 U.S. Dist. LEXIS 239792 (N.D. Cal. Dec. 15, 2021)................. 10

*Eggleston v. Reward Zone USA LLC*,
  No. 2:20-cv-01027-SVW-KS, 2022 U.S. Dist. LEXIS 20928 (C.D. Cal. Jan. 28, 2022) ........ 10

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021).................................................................................................... passim

*Libby v. Nat'l Republican Senatorial Comm.*,
  551 F. Supp. 3d 724 (W.D. Tex. 2021) ................................................................................. 12

*Macdonald v. Brian Gubernick PLLC*,
  2021 U.S. Dist. LEXIS 216788 (D. Ariz. Nov. 8, 2021)..................................................... 7, 11

*Miles v. Medicredit, Inc.*,
  *No. 4:20-CV-01186 JAR*, 2021 U.S. Dist. LEXIS 131128 (E.D. Mo. July 14, 2021).......... 9, 11

*Montanez v. Future Vision Brain Bank, LLC*,
  536 F. Supp. 3d 828 (D. Colo. 2021)...................................................................................... 10

*United States v. Serawo*p,
  505 F.3d 1112 (10th Cir. 2007) ................................................................................................ 7

*US Fax Law Ctr., Inc. v. Ihire, Inc.*,
  476 F.3d 1112 (10th Cir. 2007) ............................................................................................ 4, 8

**Statutes**

47 U.S.C.S. § 227........................................................................................................................ 2, 4

**Other Authorities**

Brief of Amici Curiae Professional Association for Customer Engagement and Noble Systems
  Corporation in Support of Petitioner .......................................................................................... 6

H.R. Rep. No. 102-317 (1991)......................................................................................................... 8

This motion is about one issue: the definition of an autodialer under *Facebook*.

In *Facebook,* the Supreme Court held that an autodialer may use a random or sequential number generator to select phone numbers from a preproduced list, and then store them for automatic dialing in the generated order. The autodialer does not have to generate the phone numbers themselves.

Here, Plaintiff alleges that Defendant's device uses a random or sequential number generator to determine the order in which to pick phone numbers from a preproduced list, and then stores those numbers to be automatically dialed in the generated order. Thus, under *Facebook*, Plaintiff pleads that the system is an autodialer.

Defendant contends that an autodialer must always generate the phone numbers themselves. But no such holding appears in *Facebook* (in fact the opposite holding appears).

Defendant points out that out-of-circuit courts have agreed with its interpretation of *Facebook.* But it omits that other district courts (including in this District) have agreed with Plaintiff's interpretation. These latter cases are persuasive because they follow the Supreme Court's words, instead of ignoring or rewriting them.

Defendant asserts that Plaintiff's interpretation of an autodialer would include a common cell phone. This attacks a straw man—a cell phone is not an autodialer under *Facebook*. In fact, it is Defendant's interpretation that has absurd consequences: a system could upload the entire phone book, randomly dial every number automatically, and not be an autodialer. This would gut the purpose of the TCPA (which is why the Supreme Court held that such a system can be an autodialer).

Defendant's motion should be denied.

1

**I.**     **The scope of the autodialer prohibition under *Facebook*.**

The TCPA prohibits using an "automatic telephone dialing system" (an autodialer) to call cell phones.  47 U.S.C.S. § 227 (b)(1) (iii).  The statute defines an autodialer as follows:

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
> > (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> > (B) to dial such numbers.

47 U.S.C.S. § 227 (a)(1).

In *Facebook*, the Supreme Court clarified this definition.  *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).  Here is the Court's statement of the issue and its primary holding:

> The question before the Court is whether that [autodialer] definition encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.' It does not. To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.

*Id.* at 1167.

So, an autodialer must "have the capacity" to store or produce a phone number "using a random or sequential number generator."  *Id.*  But what constitutes "using a random or sequential number generator"?  The Supreme Court also answered this question.

To be an autodialer, a device does not have to randomly or sequentially create the *phone numbers* themselves.  Instead, the device may use a random number generator to determine the order in which to pick phone numbers from a preexisting list.  As the Supreme Court held:

> [A]n autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time.

*Facebook*, 141 S. Ct. at 1172 n.7.

2

Therefore, an autodialer is not limited to devices that randomly or sequentially create phone numbers. Instead, an autodialer also encompasses a device that receives a "preproduced list" of phone numbers (e.g., a list of thousands of marketing leads), and then uses a "random number generator to determine the order in which to pick phone numbers from [the] list" and then "store[s] those numbers to be dialed at a later time." *Id.*

The Court explained that its holding on this point was necessary to ensure that the statutory language "to store" had meaning. The plaintiff had argued that, if a system is storing phone numbers using a random or sequential number generator, "such a device would necessarily 'produce' [phone] numbers using the same generator technology, meaning 'store or' in §227(a)(1)(A) is superfluous." *Id*. To overcome this argument, the Court held that "using a random or sequential number generator" was not limited to creating the phone numbers themselves. As a result, the word "store" captures systems that use randomly generated numbers (which are not themselves phone numbers) to order and store "preproduced" phone numbers for calling. Thus, the "store" prohibition is broader than the "produce" prohibition, and there is no redundancy. *Id.* ("'It is no superfluity,' however, for Congress to include both functions in the autodialer definition so as to clarify the domain of prohibited devices.").

In other words, based on Congress's inclusion of the word "store" in the statute, the Supreme Court confirmed that the TCPA protects people against *more* than just systems that "produce" random or sequential phone numbers to call (which would be little protection). The statute also protects people against systems that can use a random number generator to "store" preexisting lists of phone numbers, to be automatically dialed in random or sequential order. This serves the purpose of the TCPA, which is to protect "privacy interests" by "placing

3

restrictions on unsolicited, automated telephone calls." *US Fax Law Ctr., Inc. v. Ihire, Inc.*, 476 F.3d 1112, 1118 (10th Cir. 2007). Systems that use lists of phone numbers in this way can make just as many (if not more) intrusive automatic calls.  For example, such a system could upload the entire phone book and randomly or sequentially call every number.

And while the Supreme Court used a random number generator as an example, the statutory text compels applying the same holding to a system that uses a *sequential* number generator to order and store a preexisting list of phone numbers.  A device may be an autodialer if it has "the capacity … to store a telephone number using a random <u>or sequential</u> generator." *Facebook*, 141 S. Ct. at 1167 (emphasis added); 47 U.S.C.S. § 227 (a)(1).  Thus, a device is an autodialer if it can receive phone numbers from a preproduced list, use a *sequential* number generator to order and store those numbers, and then later automatically dial the numbers in that order. [1]

Here is an illustration of what a software database might look like for the kind of autodialer described in *Facebook*.  This system intakes a large list of preexisting phone numbers (marketing leads).  It then generates a call order number using either a sequential number generator (e.g., 1001, 1002, 1003, etc.), or a random number generator, assigns the generated numbers to phone numbers from the list, and then stores the information.  The system can then select sets of numbers to automatically dial (e.g., calling numbers 1,001-2,000).

---

[1] In *Facebook*, the Court also confirmed that, to be an autodialer, a device need only have the "capacity" to use a random or sequential number generator to order and store a preexisting list of phone numbers for dialing, and need not actually be used to do this.  *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021); *id.* ("The question before the Court is whether that definition encompasses equipment that <u>can</u> 'store' and dial telephone numbers…" (emphasis added)); U. S. C. §227(a)(1) (the statutory definition requires only the "<u>capacity</u>" to "store or produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers.").

| Number | Name of Lead | Phone number |
|---|---|---|
| … | **…** | **…** |
| 1001 | John Smith | 555-292-3885 |
| 1002 | Kathryn Johnson | 555-706-8392 |
| 1003 | Timony Weil | 555-389-1424 |
| 1004 | David Kelly | 555-195-8425 |
| 1005 | Samantha Caufield | 555-292-4829 |
| and so on … | **…** | **…** |

Because this device can use a random or sequential "number generator to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time," it is an autodialer. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2021).

In sum, the TCPA does not just protect the public from autodialer devices that use number generators to create the phone numbers—the statute protects the public from autodialers that randomly or sequentially generate numbers "to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time." *Id.* at 1172, n.7.

## II.     Defendant's arguments about *Facebook* lack merit.

### A.     *Facebook* did not hold that an autodialer must generate phone numbers.

Defendant argues that under *Facebook,* an autodialer must have the capacity to generate phone numbers.  Mot. 2-3. To Defendant, "*number generation* refers to *telephone* number generation."  Mot. 12 (emphasis in original).  This is Defendant's sole basis for attacking the amended complaint.   Mot. 3.  But Defendant misstates *Facebook.*

5

The Supreme Court did not hold that an autodialer must generate *phone numbers themselves*. No such holding (or anything like it) appears in the opinion. Instead, the Court held that to be an autodialer, a device must either "store" or "produce" phone numbers, "*using a random or sequential number generator." Facebook*, 141 S. Ct. at 1167 (emphasis added). And the Court clarified that the "random or sequential number generator" does not have to generate *phone* numbers. The Court said that the random or sequential number generator can also create "the order in which to pick phone numbers from a preproduced list." *Id.* at 1172 n.7.

Indeed, the Court expressly rejected Defendant's narrow interpretation of the statute (i.e., that an autodialer must always generate the phone numbers themselves), because, as explained above, it would render the statutory word "to store" redundant.

Correspondingly, the Court's analysis of the Facebook system did not turn on whether that system could *generate phone numbers*. Instead, that system was not an autodialer because it did not use a "random or sequential number generator" in any relevant respect. *Facebook,* 141 S. Ct. at 1169.

### B. Defendant's argument on Footnote 7 fails.

Defendant asserts that, despite its words, Footnote 7 really meant that a number generator must generate phone numbers themselves. Mot. 9. For this argument, Defendant relies on an example from the amicus brief cited in Footnote 7. The example is the '028 Patent, "a method of blending random and sequential number generator technologies to dial telephone numbers." Brief of Amici Curiae Professional Association for Customer Engagement and Noble Systems Corporation in Support of Petitioner at 19, *Facebook,* 141 S. Ct. 1163. Defendant points out that in the example patent, "the 'preproduced list' of phone numbers… was itself created through a

6

random or sequential number generator." Mot. 8-9. Defendant's argument relies too much on, and misuses, this example.

Footnote 7 did not say that, exactly like in the example patent, an autodialer must always generate the phone numbers. Instead, it said that, as seen in the example patent, a "number generator" can be used "to determine the order" for phone numbers. *Facebook*, 141 S. Ct. at 1172 n.7. This point helped explain that "number generator" does not always mean *phone* number generator, so that the statutory term "store" is not superfluous. *Id.* ("'It is no superfluity,' however, for Congress to include both functions in the autodialer definition so as to clarify the domain of prohibited devices.") In contrast, the Court never mentioned the generation of the phone numbers themselves and certainly did not hold that this is a necessary feature of an autodialer.

Defendant is trying to inject details from the example patent into the *Facebook* opinion, in a way that is inconsistent with the Court's words and the point that it was making. [2]

### C.    Defendant's narrow definition of an autodialer would not serve the TCPA's purpose (it would defeat it).

Defendant argues that its narrow definition of an autodialer (that it must always generate phone numbers) is required to serve the purpose of the TCPA. Defendant asserts that "*number generation* refers to *telephone* number generation" because the TCPA is concerned with "the telephone numbers called" and not the "particular order" or calls. Mot. 12 (emphasis in original).

---

[2] The Tenth Circuit is "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *United States v. Serawo*p, 505 F.3d 1112, 1122 (10th Cir. 2007); *see Macdonald v. Brian Gubernick PLLC*, , 2021 U.S. Dist. LEXIS 216788, at *4-5 (D. Ariz. Nov. 8, 2021) ("in the Ninth Circuit, 'our precedent requires that we give great weight to the dicta of the Supreme Court.'").

Defendant is suggesting that a system that generates the phone numbers themselves (as opposed to using a list) will uniquely cause problems like "dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." Mot. 7, 12. Defendant is wrong.

A system that calls numbers from a list can also cause these very problems, e.g., a system that randomly or sequentially dials every number in the phone book. And in any case, this is just *one* of many problems addressed by the TCPA.

The central purpose of the TCPA is to prevent intrusive calls. "Congress passed the TCPA to address 'the proliferation of intrusive, nuisance calls' to consumers and businesses from telemarketers.'" *Facebook,* 141 S. Ct. at 1167; *see US Fax Law Ctr., Inc. v Ihire, Inc.,* 476 F.3d 1112, 1118 (10th Cir. 2007) (the purpose of the TCPA is to protect "privacy interests' by "placing restrictions on unsolicited, automated telephone calls."). And when Congress passed the TCPA, it was not solely concerned by older autodialing systems that randomly or sequentially created phone numbers—Congress was concerned about "[m]odern telemarketing software" that "organizes information on current and prospective clients into databases." H.R. Rep. No. 102-317 (1991), at 7.

In fact, Defendant's interpretation would gut the TCPA, not serve its purpose. As mentioned above, a list dialer may upload the entire phonebook and randomly or sequentially call every number in it—without generating phone numbers itself. This is why in Footnote 7, the Court made clear that such a list dialing system *could* in fact be an illegal autodialer, so long as it used a random or sequential number generator to order calls for automatic dialling.

**D.    Under Footnote 7, the definition of an autodialer is both limited and reasonable.**

Defendant contends that, under Plaintiff's interpretation, "every dialing system would have to dial numbers either in some order or randomly" and thus "every dialer would be an ATDS," including a basic smartphone.'" Mot. 12, 8.  This attacks a straw man.

Under Footnote 7, the scope of the autodialer provision is limited and reasonable.  Take, for example, Facebook's system.  That system "maintain[ed] a database that stored phone numbers." *Facebook,* 141 S. Ct. at 1165.  But there was no contention that it generated random or sequential numbers to order those phone numbers for mass dialing.  Instead, it would "send automated text messages to those numbers each time the associated account was accessed by an unrecognized device or web browser." *Id.* at 1168.  Thus, it was not an autodialer.  *Id.*; *see Miles v. Medicredit, Inc., No. 4:20-CV-01186 JAR,* 2021 U.S. Dist. LEXIS 131128, at *6 (E.D. Mo. July 14, 2021) ("Facebook stored the telephone numbers it contacted but did not use a random or sequential number generator to store or contact those numbers; rather, Facebook's program contacted specific numbers, i.e., numbers belonging to those whom it was attempting to inform of a potentially unauthorized login.").

Similarly, a smartphone stores a database of contacts, but it cannot automatically dial through the contact list in sequential or random order (e.g., automatically and randomly dialing every number stored in your phone).  Thus, it is not an autodialer. [3]

---

[3] The Court in *Facebook* rejected a definition of autodialer that would *not* require the use of a sequential or random number generator in any respect.  This is what would "capture virtually all modern cell phones, which have the capacity to 'store telephone numbers to be called' and 'dial such numbers.'" *Facebook,* 141 S. Ct. at 1171.  But it did not hold that an autodialer must always generate phone numbers.

9

**E.      Defendant's out-of-circuit cases are not persuasive.**

Defendant relies on out-of-circuit opinions to say what the Supreme Court in *Facebook* did not say—that an autodialer "must use a number generator to generate the phone numbers *themselves.*" Mot. 9 (quoting *Eggleston v. Reward Zone USA LLC*, No. 2:20-cv-01027-SVW-KS, 2022 U.S. Dist. LEXIS 20928, at \*11 (C.D. Cal. Jan. 28, 2022)). Defendant asserts that after *Facebook,* "'most courts who have been presented with [plaintiff's theory of an ATDS]' have found that… equipment that merely uses a numerically-based randomizer to shuffle and select phone numbers does not qualify' as an ATDS." Mot. 9-10 (quoting *Cole v. Sierra Pac. Mortg. Co.*, 2021 U.S. Dist. LEXIS 239792, at \*8 (N.D. Cal. Dec. 15, 2021)).

But these cases are not persuasive because they do not grapple with the Supreme Court's words and logic in *Facebook*, and instead seek to discount or rewrite that opinion. In contrast, multiple other district courts (including in this District) have followed the plain meaning of the Supreme Court's words and its logic.

In *Montanez* (D. Colo.)*,* the plaintiff stated an autodialer claim by alleging that the calling system "retrieved each telephone number from a list of numbers in a sequential order" and automatically dialed the numbers in that order. *Montanez v. Future Vision Brain Bank, LLC*, 536 F. Supp. 3d 828, 838 (D. Colo. 2021); *id.* at 832 (the system allegedly had "the ability to generate sequential numbers" to determine the dialing "order"); Exhibit A ¶42 ("The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were

listed; b. The Platform then generated each number in the sequential order listed and [used it to send text messages]…"). [4]

So that autodialer system retrieved preexisting phone numbers from a list (rather than generating the phone numbers themselves) and it used a random or sequential number generator to set the automatic dialing order. This is the type of autodialer that the Supreme Court described in Footnote 7 and the type of autodialer that Plaintiff alleges here.

Similarly, the *Macdonald* court correctly found that, under, *Facebook*, a "device may still constitute an autodialer under the TCPA if it randomly dials numbers from a preproduced list." *Macdonald v. Brian Gubernick* PLLC, 2021 U.S. Dist. LEXIS 216788, at *4 (D. Ariz. Nov. 8, 2021). Applying the Supreme Court's words (as opposed to ignoring or rewriting them), it is sufficient to allege that an autodialer that "can import lists of leads" and "then generate sequential numbers and store those numbers in a database, to indicate the automatic dialing order for leads." *Id*. at *5 (internal quotes omitted). [5]

Applying *Facebook*, other courts have similarly found that an autodialer may use a random or sequential number generator to order preexisting phone numbers for dialing (as opposed to generating the phone numbers). *See, e.g. Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 U.S. Dist. LEXIS 131128, at *9 (E.D. Mo. July 14, 2021) (Plaintiff states an autodialer claim by alleging that the system "uploads telephone numbers to be called to its dialer,

---

[4] By "generated each number" that complaint meant that the system copied the preexisting phone numbers from a list and into a text message packet—that system did not generate the phone numbers themselves. Exhibit A ¶42.

[5] Defendant points out that Plaintiff's counsel here represented different clients in *Tehrani* and *DeClements*, where the courts adopted a contrary reading of *Facebook*. Mot. 11. Defendant omits that counsel also represented the plaintiff in *Macdonald*, where the court agreed with the plaintiff. In any case, Defendant is inappropriately attempting to make this case about Plaintiff's counsel, as opposed to the merits.

11

which then stores the numbers to be called and automatically dials those numbers"); *Libby v. Nat'l Republican Senatorial Comm.*, 551 F. Supp. 3d 724, 729 (W.D. Tex. 2021) (Plaintiff states an autodialer claim where the system "calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers."); *Atkinson v. Pro Custom Solar LCC*, 2021 U.S. Dist. LEXIS 112396, at *2 (W.D. Tex. June 16, 2021) (Plaintiff states an autodialer claim, in alleging that Defendant's system "has the present… capacity to dial numbers in a random and/or sequential fashion."); *Carl v. First Nat'l Bank*, 2021 U.S. Dist. LEXIS 111889, at *20-21 (D. Me. June 15, 2021) (it is a trialworthy issue whether a system is an autodialer if it loaded "files with a list of accounts to call" and "stored [the numbers] for later automatic dialing.").

Because these holdings are consistent with the Supreme Court's words and its logic, this Court should hold the same.

**III.    Applying *Facebook*, the Complaint states a claim.**

Defendant does not dispute that, if the Court agrees with Plaintiff about *Facebook*, Plaintiff states a claim.

As the complaint pleads, Defendant admits that it called Plaintiff's cell phone multiple times, using its Five9 "predictive" autodialing functionality.  Dkt. 79 Am. Compl.  ¶¶36, 48, 26.

Five9's website describes the system as an auto dialer, i.e., a system that "uses lists of phone numbers to automatically dial":

## What is an Auto Dialer?

An **auto dialer** uses lists of phone numbers to automatically dial, leave messages, or request information from prospects or customers. Depending on the needs of your company it can have different types of auto dialers to best fit your situation. Dialers can range anywhere from prepping you for a call to dialing a set number of phone numbers in a specific amount of time. Auto dialers are usually implemented when manual dialing is taking away from an agent's productivity, avoiding voicemails and disconnected phone lines ends up saving a lot of time.

Am. Compl. ¶¶25-26.

Critically, the Five9 system can generate sequential numbers and store these sequential numbers in a database, to indicate the dialing order for leads.  Am. Compl. ¶28.  The system can also generate random numbers (to order calls) and store this random number in a database (to indicate the dialing order).  *Id.*  According to Five9's user guides, the system can import lists of numbers and store them for dialing in either sequential order ("according to the order they were imported") or random order ("shuffled to randomly dial"):

## Data Import

Import outbound calling lists and associate them to campaigns. Lists are dialed according to the order they were imported, or lists can be shuffled to randomly dial the records.

## Benefits

Upload target prospect lists on the fly and accelerate your momentum by filling the sales pipeline with potential leads.

Am. Compl. ¶29.  To do this, the system can generate sequential numbers (reflecting the import order) or random numbers (reflecting the shuffled order) and store these generated numbers in a database, for controlling the dialing order.  *Id.*

The following table, from the Five9 Campaign Administrator Guide, illustrates one way the system can generate sequential numbers (the "Upload order") to order a list of phone

13

numbers for calling.  (Although not depicted in the table, each database row is also associated with a telephone number imported from a list).

| Upload order | RANK | ZIP | Balance |
|---|---|---|---|
| 1 | SECOND | 94588 | 1000 |
| 2 | SECOND | 34256 | 10 |
| 3 | FIRST | 10325 | 95 |
| 4 | FIRST | 94678 | 2 |
| 5 | THIRD | 23453 | 356 |
| 6 | SECOND | 55456 | 2134 |

Am. Compl. ¶30.

The user can also generate a new sequential call order, based on other contact fields, and store the phone numbers in that new order. *Id.* at ¶31 ("The dialing order can be set on the basis of any contact fields or by several variables and functions, such as Last Disposition Date/Time.") (quoting the Five9 Campaign Administrator Guide).

On top of this, the Five9 system can also generate random numbers to shuffle the call order and then store the phone numbers in that new (random) call order:

## Randomly Reorder the List

To randomly reorder the list, click **Shuffle**.

Unless campaign profile options are used, the system dials in the order you upload the list so this option may be useful to randomize a list that is in phone number order. To apply a different dialing order to the list, use a campaign profile. Read more in *Filtering And Sorting Lists (Profiles)*.

Am. Compl. ¶33 (quoting the Five9 Basic Administrator Guide).

The system can then dial phone numbers in the stored order. "The Dialer always remembers the list position even after stopping the campaign. If a campaign is restarted, the dialer returns to that position. It completes the entire list or lists before returning to the top to dial

14

numbers marked for redial."  Am. Compl. ¶33 (quoting the Five9 Campaign Administrator's Guide).

This is precisely the kind of autodialer that the Supreme Court described:  one that uses a random or sequential number generator to "determine the order in which to pick phone numbers from a preproduced list" and "store those numbers to be dialed at a later time." *Facebook*, 141 S. Ct. at 1172 n.7.  So accepting Plaintiff's factual allegations, it is plausible that Defendant's calling system is an autodialer.

Accordingly, the Court should deny Defendant's motion to dismiss.

May 3, 2022                                             Respectfully submitted,

                                                        *s/ Jonas Jacobson*

                                                        **DOVEL & LUNER, LLP**
                                                        Jonas Jacobson
                                                        jonas@dovel.com
                                                        201 Santa Monica Blvd., Suite 600
                                                        Santa Monica, CA 90401
                                                        Telephone: (310) 656-7066
                                                        Facsimile: (310) 656-7069

                                                        **KAUFMAN P.A.**
                                                        Avi R. Kaufman, Esq.
                                                        kaufman@kaufmanpa.com
                                                        400 NW 26th Street
                                                        Miami, FL 33127
                                                        Telephone: (305) 469-5881

                                                        **LAW OFFICES OF STEFAN COLEMAN, P.A.**
                                                        Stefan Coleman
                                                        law@stefancoleman.com
                                                        201 S. Biscayne Blvd, 28th Floor
                                                        Miami, FL 33131
                                                        Telephone: (877) 333-9427
                                                        Facsimile: (888) 498-8946

15

*Attorneys for Plaintiff Maura Scherrer*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd day of May, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*s/ Jonas Jacobson*</u>
Jonas Jacobson

16