IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 19-cv-03703-SKC

MAURA SCHERRER, individually, and on
behalf of all others similarly situated,

      Plaintiff,

v.

FPT OPERATING COMPANY, LLC
d/b/a TALUS PAYMENTS, a Texas limited liability company,

      Defendant.

## ORDER DENYING MOTION TO DISMISS [DKT. 80]

This class action centers on whether Defendant FPT Operating Company, LLC, violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*, by making certain calls to Plaintiff Maura Scherrer and to members of the purported class (if a class of similarly situated individuals is certified). Plaintiff filed her First Amended Class Action Complaint (Complaint), Dkt. 79,[1] alleging in a single cause of action that Defendant violated the TCPA by calling her cellular telephone (and those of the purported class) without her prior consent using an automatic telephone dialing system. Dkt. 79, ¶¶59-63. The matter is presently before the Court

---

[1] The Court uses "Dkt. ___" to refer to docket entries in CM/ECF.

on Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint for Failure to State a Claim, Dkt. 80 (Motion). Plaintiff filed her Response, Dkt. 82, to the Motion, and Defendant filed its Reply, Dkt. 83, in support of the Motion. The Court carefully reviewed the Motion and associated briefing, the Complaint, and applicable law. No hearing is necessary. For the reasons set forth below, the Court denies the Motion.

**STANDARD OF REVIEW**

In deciding a motion under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the mere possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely

consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "Nevertheless, the standard remains a liberal one, and 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 WL 1130624, at *1 (D. Colo. Mar. 18, 2013) (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).

## ANALYSIS

Plaintiff alleges that Defendant violated the TCPA by calling her cellular telephone without her prior consent using an automatic telephone dialing system. *See* Dkt. 79, ¶¶59-63. Defendant argues that Plaintiff's allegations fail as a matter of law because she has failed to allege that Defendant used an automatic telephone dialing system as that term is defined by the TCPA, 47 U.S.C. § 227(a)(1), and as interpreted by the Supreme Court in *Facebook Inc. v. Duguid*, 141 S. Ct. 1163 (2021). *See* Dkt. 82, pp.1-3.

To state a claim, Plaintiff must plausibly allege that Defendant used an automatic telephone dialing system (ATDS).[2] *See* 47 U.S.C. § 227(b)(1)(A). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at § 227(a)(1). The Supreme Court in *Duguid* further explained, "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Duguid*, 141 S. Ct. at 1167. Defendant argues that, in *Duguid*, "the Supreme Court's construction of the ATDS definition rules out any argument that equipment can be an ATDS even if it has no capacity to generate phone numbers randomly or sequentially." Dkt. 80, p.7; *see also id.* at pp.11-12. The Court disagrees and finds Defendant's argument overstates *Duguid*.

Important here, in attempting to construe Section 227(a)(1), the plaintiff in *Duguid* argued that only "produce," and not "store," was modified by "using a random or sequential number generator." *Duguid*, 141 S. Ct. at 1169. In considering that issue, the Supreme Court did not address the additional issue of whether a "random or sequential number generator" refers only to a device that generates telephone

---

[2] The Court uses "ATDS" to refer to an "automatic telephone dialing system" as that phrase is defined at 47 U.S.C. § 227(b)(1)(A). Conversely, the Court uses "autodialer" to refer to a system that makes automatic telephone calls and that may, or may not, also be an ATDS.

4

numbers themselves, or also a device that generates a number used to select from a list of indexed and existing telephone numbers. *Eggleston v. Reward Zone USA LLC*, 2:20-cv-01027-SVW-KS, 2022 WL 886094, at *3 (C.D. Cal. Jan. 28, 2022) (dismissing complaint that did not allege the telephone numbers were randomly or sequentially generated, but noting that *Duguid* "does not conclusively resolve *how* that number generator must be used – whether it must be used to generate the phone number itself, or whether it may also be used for indexing and selecting phone numbers").

There is much ado in this case (and many others) about Footnote 7 in *Duguid*. The Supreme Court included Footnote 7 after it explained,

> It is true that, as a matter of ordinary parlance, it is odd to say that a piece of equipment "stores" numbers using a random number "generator." But is less odd as a technical matter. Indeed, as early as 1988, the U. S. Patent and Trademark Office issued patents for devices that used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing).

*Duguid*, 141 S. Ct. at 1171-72 (*citing* Br. for Pro. Ass'n for Customer Engagement et al. as *Amici Curiae* (hereinafter, "*Amici Curiae*"), pp.15–21). The Supreme Court then continued in Footnote 7 to reject Duguid's argument that the patent cited by the *Amici Curiae* brief (and thus by the Supreme Court), which would "produce" numbers using one number generator and then "store" them using a second number generator, rendered "store" superfluous under 47 U.S.C. § 227(a)(1). *Id.* at 1172 n.7.[3]

---

[3] The full text of Footnote 7 is as follows:

Critically here, in rejecting that argument, the Supreme Court noted, "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* (*citing Amici Curiae*, p.19). Plaintiff relies on this statement to support her argument that a random or sequential number generator under the TCPA can generate a number (as opposed to a telephone number) that is used to store and to order a list of telephone numbers to be called later. Dkt. 82, p.9. Defendant disagrees. Dkt. 80, pp.8-9.

The Supreme Court's statements in Footnote 7 are dicta. But this Court affords

---

> Duguid argues that such a device would necessarily "produce" numbers using the same generator technology, meaning "store or" in § 227(a)(1)(A) is superfluous. "It is no superfluity," however, for Congress to include both functions in the autodialer definition so as to clarify the domain of prohibited devices. *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 544, n. 7, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time. See Brief for Professional Association for Customer Engagement et al. as *Amici Curiae* 19. In any event, even if the storing and producing functions often merge, Congress may have "employed a belt and suspenders approach" in writing the statute. *Atlantic Richfield Co.* v. *Christian*, 590 U. S. ——, ——, n. 5, 140 S.Ct. 1335, 1350, n. 5, 206 L.Ed.2d 516 (2020).

*Duguid*, 141 S. Ct. at 1172 n.7.

it considerable weight based on its recency and due to the dearth of controlling precedent on point. *See Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("While these statements are dicta, this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." (*citing Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1540 n.10 (10th Cir. 1995))). To be sure, other courts have found this dicta persuasive. *See MacDonald v. Brian Gubernick PLLC*, CV-20-00138-PHX-SMB, 2021 WL 5203107, at *2 (D. Ariz. Nov. 9, 2021) ("a footnote of the opinion recognized that a device may still constitute an autodialer under the TCPA if it randomly dials numbers from a preproduced list" (citing *Duguid*, 121 S. Ct. at 1172 n.7)).

The Tenth Circuit has not opined on whether an autodialer[4] (as alleged in the Complaint) that stores existing telephone numbers and uses a random or sequential number generator to select the order in which the telephone numbers will be called, is an ATDS under the TCPA. And a split of authority exists in this District. *Compare Montanez v. Future Vision Brain Bank, LLC*, 536 F. Supp. 3d 828, 837 (D. Colo. 2021) (denying motion to dismiss that argued an autodialer that allegedly used a random or sequential number generator (but not a telephone number generator) did not meet the ATDS definition), *with Mina v. Red Robin Int'l, Inc.*, 20-cv-00612-RM-KLM, 2022

---

[4] *Supra* n.2.

7

WL 2105897, at *4 (D. Colo. June 10, 2022) (recommending dismissal of complaint because it failed to allege the random or sequential number generator used generated telephone numbers), *report & rec. adopted*, 2022 WL 17547830 (D. Colo. Aug. 19, 2022). Other courts facing this riddle and examining Footnote 7 have held an ATDS is not limited to a telephone-number generator. *See, e.g., MacDonald*, 2021 WL 5203107, at *2; *but see Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 299-301 (D. S.C. 2021).

Based on the weight of authority and the Supreme Court's dicta in Footnote 7 of *Duguid*, this Court finds an autodialer that stores a list of telephone numbers using a random or sequential number generator to determine the dialing order is an ATDS under the TCPA. And Plaintiff's allegations are sufficient at this stage to plausibly plead a claim that Defendant violated the TCPA. *See Libby v. Nat'l Rep. Sen. Comm.*, 551 F. Supp. 3d 724, 729 (W.D. Tex. 2021) ("Under the facts alleged herein, Plaintiff claims that Defendant called and texted him using an automatic telephone dialing system that 'calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers.' [citation omitted] He does not allege that Defendant placed targeted, individualized calls or texts to him. The [c]ourt thus finds these factual allegations sufficient to survive dismissal under Rule 12(b)(6)."); *see also Carl v. First Nat'l Bank of Omaha*, 2:19-cv-00504-GZS, 2021 WL 2444162, at *9 n.10 (D. Me. June 15, 2021) (acknowledging that a system that used a random number generator to store telephone numbers could be an ATDS). Such an

autodialer is an ATDS even if the list of telephone numbers was not itself generated using a random or sequential number generator. *See Carl*, 2021 WL 2444162, at *9 n.10.

Defendant (and certain of the authorities upon which it relies) has parsed Footnote 7 and, more importantly, the *Amici Curiae* brief cited by the Supreme Court. Defendant divines that if a number generator is used to store telephone numbers, the telephone numbers themselves must have also first been generated by a random or sequential telephone number generator. Dkt. 80, p.8-9 (*citing, e.g., Hufnus v. DoNotPay, Inc.*, 20-cv-08701-VC, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021)); *see also Timms*, 543 F. Supp. 3d at 299-301.

It is true that the specific patent discussed in the *Amici Curiae* brief was one in which a list of telephone numbers was generated using a number generator, and that list was then subjected to a second random number generator for storing and determining the calling order. *See Amici Curiae*, p.17. But this Court believes that the *Hufnus* and *Timms* decisions read too much into the *Amici Curiae* brief and patent to limit an ATDS to a device that either generates telephone numbers or one that dually generates telephone numbers, and subsequently, the calling order. In this Court's view, this conclusion contravenes the Supreme Court's express words.

In Footnote 7, the *Duguid* Court gave an example of an autodialer that might store telephone numbers using a random or sequential number generator. *Id.* at 1172 n.7 ("For instance, an autodialer might use . . . a random number generator to

9

determine the order in which to pick phone numbers *from a preproduced list*. It would then store those numbers to be dialed at a later time." (emphasis added)). The Supreme Court's own words demonstrate it had more in mind in terms of what may constitute an autodialer beyond the single patented device discussed in the *Amici Curiae* brief. And nothing in the text of the opinion or Footnote 7 suggests the Supreme Court's patent-example was exclusive.[5]

Further, the *Duguid* Court noted that "even if the storing and producing functions *often* merge, Congress may have 'employed a belt and suspenders approach' in writing the statute." *Duguid*, 141 S. Ct. at 1172 n.7 (emphasis added) (citation omitted). "Often" is not "always," further suggesting the Supreme Court anticipated instances in which a random or sequential number generator would be used to store telephone numbers and generate the calling order but without generating the numbers themselves. *See id.* Indeed, to store telephone numbers using a random or sequential number generator loses meaning if the TCPA is read only to apply when the list of telephone numbers is itself generated using another random or sequential number generator. *See Duguid*, 141 S. Ct. at 1172 n.7.

This Court has also reviewed Defendant's persuasive authorities but is not

---

[5] Similarly, in reviewing the *Amici Curiae* brief, the patent discussed was itself merely an example of a patent "describ[ing] a dialer that the TCPA was presumably intended to encompass." *Amici Curiae*, p.17. Nothing in the *Amici Curiae* brief suggests that the patent discussed was intended to describe all activity prohibited under the TCPA. *See, generally, id.*

10

persuaded by them. Many of these authorities are distinguishable on factual grounds because, for example, the plaintiffs in those cases provided their telephone numbers to the defendants or were specifically targeted by them. *See, e.g., Hufnus*, 2021 WL 2585488, at *1 ("But the platform only contacts phone numbers specifically provided by consumers during DoNotPay's registration process, and not phone numbers identified in a random or sequential fashion."); *see also Barry v. Ally Fin., Inc.*, 20-12378, 2021 WL 2936636, at *4 (E.D. Mich. July 13, 2021) (dismissing case where the defendant made calls "targeted at specific individuals in connection with specific accounts held by [d]efendant"); *Borden v. eFinancial, LLC*, C19-1430JLR, 2021 WL 3602479, *5 (W.D. Wash. Aug. 13, 2021) ("[Defendant's] use of its system to send advertisement text messages to consumers who entered their phone numbers into a form on its website simply does not implicate the problems caused by autodialing of random or sequential blocks of numbers that Congress sought to address when it passed the TCPA.").

Defendant also argues that "the statutory context" requires the Court to adopt Defendant's position, *see* Dkt. 80, p.7. (*citing Duguid*, 141 S. Ct. at 1167, 1171-72), and suggests that Plaintiff's interpretation could lead to all modern cell phones being categorized as ATDSs, *id.* at pp.7, 12. This argument, however, misapprehends the *Duguid* plaintiff's argument, namely that "store" was not modified at all by the phrase "using a random or sequential number generator." *See Duguid*, 141 S. Ct. at 1169. In context of the *Duguid* plaintiff's argument, the Supreme Court's concern

about whether modern cell phones would be included in the definition of an ATDS is understandable. But here, Defendant's concerns are misplaced. Moreover, under Defendant's theory of an ATDS, an opposite outcome could result, whereby someone could curate a list of only emergency services telephone numbers, and then store those telephone numbers, utilizing a random or sequential number generator to determine the calling order. Yet that person would not have utilized an ATDS, according to Defendant's theory. Such a result, however, would tie up emergency telephone numbers, which is exactly what Congress was trying to combat with the TCPA. *See Duguid*, 141 S. Ct. at 1167-68.

Taking Plaintiff's allegations in the light most favorable to her, the Complaint alleges a violation of the TCPA because it alleges the following: Defendant "utilizes an automated outbound dialer to contact small to medium sized business owners nationwide regarding [Defendant's] merchant payment processing solutions." Dkt. 79, ¶20. "Defendant fail[ed] to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers such as Plaintiff's." *Id.* at ¶22. "Defendant runs an Outbound Contact Center (OCC) that uses Five9's automated dialing system to automatically call lists of leads." *Id.* at ¶27. "The Five9 system can generate sequential numbers and store these sequential numbers in a database, to indicate the dialing order for leads. The system can also generate random numbers and store these random numbers in a database, to indicate a random dialing order for leads." *Id.* at ¶28. "The Five9 system can also generate random numbers, to order

calls, and store these random numbers in a database, to indicate the 'shuffled' dialing order." *Id.* at ¶32. "The system can then dial phone numbers in the stored order." *Id.* at ¶33. Plaintiff further alleges that Defendant called her cellular telephone multiple times, *id.* at ¶¶36, 37, and 43, and that Plaintiff believes that the calls were received from an autodialer, *id.* at ¶¶36, 38, and 44. *See Callier v. MultiPlan, Inc.*, EP-20-CV-00318-FM, 2021 WL 8053527, at *17 (W.D. Tex. Aug 26, 2021) ("To require Plaintiff to plead the specifics of the technology used to place harassing calls would raise the pleading standard for TCPA claims impermissibly high."). These allegations are sufficient to plausibly state a claim at the pleading stage premised on an alleged violation of 47 U.S.C. § 227(b)(1)(A).[6]

---

[6] Even assuming the definition of an ATDS requires that a stored list of telephone numbers be itself created randomly or sequentially, such an issue is better decided at the summary judgment stage of litigation. *See Libby v. Nat'l Rep. Sen. Comm.*, 551 F. Supp. 3d 724, 729 (W.D. Tex. 2021) ("as a practical matter, no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage—only the defendant will have that knowledge. However, at this stage, Plaintiff has pled sufficient facts to proceed with discovery, at which time he will have the opportunity to discover the precise technology that was used at the time of the alleged violations."); *Montanez*, 536 F. Supp. 3d at 839 ("The Court makes this recommendation [to deny the motion to dismiss] specifically acknowledging that this case is at the motion to dismiss stage. . . . The Court fully expects that the issues raised in the Motion will be raised again by Defendant on a future motion for summary judgment when the Court can consider extrinsic evidence."); *Brickman v. Facebook, Inc.* 16-cv-00751-WHO, 2021 WL 4198512, at *3 (N.D. Cal. Sept. 15, 2021) ("I recognize that some courts have considered the determination of whether a plaintiff has plausibly shown the use of an ATDS covered by *Duguid* to be more appropriately resolved on summary judgment than at the pleading stage. But in many of those cases, the plaintiffs alleged that they had *never* provided defendant with their phone numbers in the first place, making it at least plausible that a prohibited number generator had been used to produce or store the numbers called.");

\*   \*   \*

For the reasons shared above, the Court DENIES the Defendant's Motion to Dismiss, Dkt. 80.

DATED: July 20, 2023.

BY THE COURT:

_____
S. Kato Crews
United States Magistrate Judge

---

*Miles v. Medicredit, Inc.*, 4:20-CV-01186 JAR, 2021 WL 2949565, at *4 (E.D. Mo. July 14, 2021) ("newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage"); *Callier*, 2021 WL 8053527, at *17 ("This is properly addressed on summary judgment."). Here, there is no allegation that Plaintiff provided her telephone number to Defendant or had any prior business relationship with Defendant. *See, generally*, Dkt. 79.

14